## LOUIS FREUDENSTEIN

*v.*

## CALVIN D. McNIER *et al.*

1. CONSTABLE'S BOND—*law in force at the time governs.* In determining the liability of a constable and his sureties on his bond, for his official acts, the bond and the statute in force at the time must be regarded as the contract between the defendants and the public.

2. SAME—*liability for neglecting to levy execution.* A constable and his sureties are liable on his bond for any loss occurring by his neglect to levy an execution in his hands, when notified of property in his county; and the illness or sickness of the constable at the time furnishes no defense to the action.

3. CONSTABLES—*duty to turn execution over to another when he can not act.* If a constable is ill, or so sick as not to be able to make a levy under an execution in his hands, it is his duty to have the same placed in the hands of some other constable who can act, or to notify the plaintiff in execution, or the justice who issued it, so that they may place it in the hands of some other officer.

APPEAL from the Circuit Court of DeWitt county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. MOORE & WARNER, for the appellant.

Messrs. DONAHUE & KELLY, for the appellees.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This action was brought by Louis Freudenstein, before a justice of the peace, against Calvin D. McNier, as constable,

and S. P. Waldo and D. M. Gavender, his sureties, on the official bond of the constable.

The condition of the bond read in evidence, declared that the principal and his sureties, jointly and severally, agree to pay to each and every person who may be entitled thereto, all such sums of money as the said constable may become liable to pay on account of any executions which shall be delivered to him for collection by virtue of his office, and all such damages as each and every person may sustain by reason of any malfeasance, misfeasance or non-performance of duty on the part of said constable.

It has been provided by statute, if a constable shall fail or neglect to return an execution within ten days after its return day, or if the demand, debt or claim be wholly or in part lost, or if any special damage shall arise to any party on account of the neglect or refusal to act, or the misfeasance or nonfeasance of any constable in the discharge of any official duty, the party aggrieved may have his action against such constable and his sureties, on the official bond, and shall recover thereon the amount of the execution and costs, with interest from the date of the judgment upon which the execution issued.

In determining the liability of the constable and his sureties for the official acts of the constable, the bond and the statute in force at the time must be regarded as the contract between the defendants and the public.

It appears, from the evidence, that in July, 1872, appellant recovered a judgment before a justice of the peace of DeWitt county against Isaac J. Shinnaman. On the 3d day of August, thereafter, an execution was issued on the judgment, and delivered to the constable, McNier. Shinnaman, at the time, lived a short distance across the line, in Piatt county, but the constable was notified, that on the 23d day of August the defendant in the execution would have property at a Mr. Brown's, in DeWitt county, subject to be levied upon, and he was requested to make the levy. When the time arrived that the constable was notified the defendant in execution would have property in the county subject to the execution, he came into

14—81ST ILL.

the county with a threshing machine and three span of horses, and remained there from three to four days. The constable, however, although he resided only a short distance from the place where the property was, made no attempt whatever to levy upon it. The execution was returned no property found, and the defendant in the execution has since died, and his estate is insolvent.

The only excuse offered by the constable for his failure to discharge his duty and make a levy as required by law was, that, at the time the property was in his county, he was sick with chills and fever, and in consequence thereof made no effort to levy upon the property.

The appellant, on the trial, objected to the introduction of all evidence tending to prove sickness of the constable as a defense to the action, but the objection was overruled and the evidence admitted.

At the request of appellees, the court gave this instruction to the jury:

"The court instructs the jury, for the defendants, that if they believe, from the evidence, that an execution came into the hands of McNier, as constable, in the case of Freudenstein v. Shinnaman, for $54.50 and costs, dated August 3, 1872, and that McNier was notified by the justice that Shinnaman would have property in the county on the 23d and 24th days of August, 1872, following; and if they further believe, from the evidence, that on the 23d and 24th days of August, 1872, when the property of Shinnaman was in the county, the constable, McNier, was confined to his bed, from sickness, at the time the property was in the county, in such manner that he was incapable of attending to his official duties, then they will find for the defendant, but if, after the defendant recovered, if he recovered so that he could perform his official duty, and the property still remained in the county of DeWitt, the defendant failed to make all reasonable efforts in his power to find such property and make the levy, the defendant would be liable."

The court refused to instruct the jury, on behalf of appellant, that the sickness of the officer could not be relied upon as a defense to the action.

It is apparent that appellant lost his debt on account of the failure of the constable to perform a duty the law cast upon him, and it is not denied that the constable had due and ample notice when the property would be in his county which was liable to be taken on the execution, and that the property remained in the county of DeWitt a sufficient length of time, so that, by the exercise of reasonable exertion on the part of the constable, it could have been secured upon the execution.

The only excuse the constable has to offer to relieve him and his sureties from the liability imposed by the statute and his official bond is, that he was sick, and not able to perform a duty voluntarily assumed.

If sickness could be relied upon as defense to an action in any case brought upon an official bond of a constable for a failure to discharge a duty, resulting in loss, the constable in this case has, in our judgment, entirely failed to establish a state of facts which can shield him and his sureties from an action. If he was sick, and unable to serve the execution, why did he not notify appellant or the justice who issued it, so that it could be placed in the hands of some other constable, and thus save the debt? The property remained in DeWitt county from three to four days. If the constable was sick when the defendant in the execution first came in the county with the property, there was ample time for him to have sent the execution to a constable in good health, and had it levied; but the constable did nothing, but quietly remained at his house for three or four days, when the property was within two miles of his residence, and permitted the defendant in execution to come and go with the property, as he saw fit. Such conduct on the part of an officer entrusted with the business of the public, can not be sanctioned or sustained.

But we can not hold that sickness of a constable will relieve him and his sureties from the duties imposed by law. In the

case of *The People* v. *Palmer et al.* 46 Ill. 398, which was an action brought against a sheriff and his sureties, upon the official bond of the sheriff, for a failure to levy an execution upon property of a defendant, it was said: "It is a safe rule to hold that a sheriff failing to levy on personal property in the possession of the defendant, can only discharge himself from liability by showing the property was not subject to levy. The *onus* is upon the officer."

While it is true, the defense relied upon in that case was not sickness, yet the reasoning will apply with as much force and effect as if the excuse relied upon there had been the same as set up to defeat this action.

If a sheriff can not, on account of sickness, discharge the duties imposed upon him by law, he must provide a sufficient number of deputies, so that the business will not be neglected or left undone. So, too, with a constable. Should he be overtaken with sickness, and unable to discharge the duties of his office, he should resign, or pass the business into the hands of other like officers who can properly attend to the business, so that loss will not follow.

Public policy requires that a person elected or chosen to fill an official position, should be held to a strict performance of every duty enjoined upon him by law. In no other manner can the laws be properly enforced and the rights of the people preserved.

As the sickness of the constable was no defense to the action brought upon the official bond, the evidence of sickness was improperly admitted, and the instructions of the court upon this question, given for appellees, were erroneous, for which the judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE DICKEY: While I concur in the judgment, it is my opinion that the rule that illness can not excuse the non-performance of an official act enjoined, is laid down too broadly in this opinion, and needs qualification. In my view of the law, it will not do to hold that *no illness*, however extreme,

can excuse an officer for any such omission. The law does not require the performance of impossible acts.

Mr. Cʜɪᴇꜰ Jᴜsᴛɪᴄᴇ Sᴄᴏᴛᴛ: I concur with Mr. Jᴜsᴛɪᴄᴇ Dɪᴄᴋᴇʏ.